UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-11-GWU

DALLAS BLEVINS,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-11  Blevins

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-11  Blevins

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

6

such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Dallas Blevins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, a cervical and lumbar strain, and an anxiety disorder.  (Tr. 17).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Blevins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 21-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs assuming that he were capable of "medium" level exertion, and also had the following non-exertional restrictions.  He:  (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, crawl, and climb ramps and stairs; (3) could have no concentrated exposure to vibration; and (4) could perform work which required no

more than simple instructions in object-focused settings, and no more than occasional, superficial interaction with others. (Tr. 289-90). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 290).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Blevins alleged disability due to back problems, neck and head pain, and "passing out." (Tr. 83). He testified that he had stopped working as a cable TV installer after a motor vehicle accident in March, 2005, which had left him with anxiety and poor concentration, as well as back problems that prevented him from sitting more than 20 to 30 minutes at a time. (Tr. 271, 274, 283). He was receiving counseling and medication at a Comprehensive Care Center (CCC), and found the medication helpful. (Tr. 280). He had no side effects from any of his medication. (Tr. 282). He forced himself to walk half a mile twice a week, though he was not always able to finish. (Tr. 275, 283). He stated that a neurosurgeon, Dr. Bean, had advised him to use a cane, but he did not use it at all times. (Tr. 286).

Mr. Blevins had been evaluated for back pain prior to his motor vehicle accident in March 2005, and the medical evidence includes an MRI of the lumbosacral spine dated June 29, 2004 which showed degenerative disc disease

from the levels L3 to S1 with a moderate disc protrusion or herniation at L4-5.  (Tr. 164).

Dr. James Bean, a neurosurgeon, ordered a new MRI in May, 2005.  (Tr. 173-4).  Dr. Bean noted that there was essentially no difference between the two MRIs.  (Tr. 170). He sent his patient for physical therapy, but concluded that he was at maximum medical improvement by July 11, 2005, and, in view of the fact that there were no neurological deficits, concluded that his continued back pain was due to degenerative disc disease, and assigned a permanent impairment of only eight percent.  (Tr. 171).  However, he limited Mr. Blevins to lifting no more than 12 pounds, and "no bending, stooping, twisting, bouncing, crawling, or kneeling." (Id.). There is no indication that he advised the plaintiff to use a cane.

Dr. David Muffly, an orthopedist, examined Mr. Blevins on October 13, 2005, and reviewed the MRI reports.  (Tr. 235-6).  He found tenderness and spasms to examination and a somewhat reduced range of motion, and diagnosed an acute lumbar strain, "in the setting of chronic low back pain," and, in contrast with Dr. Bean, indicated that the 2005 MRI showed a new disc protrusion.  (Tr. 236).  He also diagnosed a cervical strain related to the motor vehicle accident, which was not yet totally resolved.  (Id.).  He also assigned an eight percent impairment, and limited the plaintiff to "less than" 20 pounds lifting, with a position change every hour, a total of sitting or standing only three hours each in an eight-hour day, with

"minimal" bending or stooping and no frequent turning of the neck.  (Tr. 237).  In other words, he limited the plaintiff to less than full-time work.

Dr. Richard Sheridan, an orthopedic surgeon, examined the plaintiff on June 22, 2005 and apparently reviewed some records, although two pages of his report, including much of his physical examination, are missing.  (Tr. 245-47).[1]  His conclusion was that there was essentially no difference between the two MRI reports, and that the motor vehicle accident had caused a temporary exacerbation of a pre-existing condition.  (Tr. 247).  He did not feel that any work restrictions were required.  (Tr. 248).

Finally, Dr. Gregory Snider, a specialist in occupational medicine, examined the plaintiff on October 18, 2005, and reviewed a number of records, although his report is contradictory on whether the MRI reports were made available.  (Tr. 252-3).  However, he did have Dr. Bean's office notes, which discussed the MRIs.  (Tr. 253).  Dr. Snider found only mild tenderness of the cervical spine with a moderate reduction in range of motion, and a somewhat reduced range of motion of the lumbosacral spine.  (Tr. 252).  There was no focal weakness on manual muscle testing.  (Id.).  He felt that Mr. Blevins had a transient cervical strain and a transient exacerbation of chronic low back pain.  (Tr. 253).  He might have some "moderate"

---

[1]The ALJ's decision makes it clear that the pages were missing at the administrative level, and not just from the court transcript.  (Tr. 22).

limitations due to his chronic complaints, but did not see any reason he could not return of his job as a cable installer.  (Id.).

The ALJ reasonably discounted Dr. Bean's lifting restrictions.  Not only was a restriction to sedentary lifting seemingly inconsistent with an impairment of only eight percent, Dr. Bean's comment that there was no substantial difference in the pre- and post-accident MRIs and no neurological deficits does not explain why the plaintiff was unable to work at his prior job, which had required him to lift over 100 pounds, by his report.  (Tr. 85). Thus, although Dr. Bean was a treating source, the ALJ provided a sufficient rationale for declining to give his opinion controlling weight. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544-6 (6th Cir. 2004).  Dr. Muffly's severe restrictions are also called into question by his relatively mild eight percent impairment rating, and, in any event, as a one-time examiner, he was not entitled to the deference due to a treating source such as Dr. Bean.  The other two physicians also examined the plaintiff one time, although they had the benefit of a review of prior records.  Regardless of what may be said about the missing pages from Dr. Sheridan's report, Dr. Snider's examination results were reasonably consistent with Dr. Bean's findings, and his conclusion that Mr. Blevins would have some moderate limitations is not inconsistent with the ALJ's residual functional capacity finding, which tracks the conclusions of state agency reviewing sources. (Tr. 190-205).

07-11  Blevins

The plaintiff argues that the ALJ's decision did not properly evaluate his subjective complaints of pain, but a review of the ALJ decision shows that he considered the plaintiff's testimony and written allegations in detail, and properly found that, although there was evidence of an underlying condition which could cause pain, the objective evidence did not support a finding that the condition was of a severity that could give rise to the degree of pain alleged.  Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853-4 (6th Cir. 1986).  Therefore, the ALJ's restrictions were supported by substantial evidence.

The plaintiff makes no specific argument regarding his alleged mental impairment.  Records from the CCC showed that he was diagnosed with a mood disorder and given a Global Assessment of Functioning (GAF) score of 65-75 (Tr. 188), reflecting, at most, a "mild" impairment.  Diagnostic and Statistical Manual of Mental Disorders (4th Edition--Text Revision) (DSM-IV-TR), p. 34.  The treating psychiatrist later reduced the GAF to 60 without explanation.  (Tr. 182).  This would still reflect only a "moderate" impairment per the DSM-IV-TR.  Subsequently, the plaintiff reported that his medications had helped, and his counselor indicated that he seemed to be "doing much better."  (Tr. 257-8).  Mr. Phil Pack, a psychologist, examined the plaintiff and diagnosed an anxiety disorder "by history," and administered IQ testing.  (Tr. 177-80).  However, there were several indications that the plaintiff was malingering on IQ testing, and Mr. Pack found that the plaintiff

12

07-11  Blevins

would have no worse than a "limited but satisfactory" ability to make occupational, performance, and personal-social adjustments. (Tr. 179-81). Psychologists Tammy Hatfield and Barbara Belew also examined the plaintiff on one occasion and obtained IQ testing results which were significantly higher than on Mr. Pack's testing. (Tr. 226). They also obtained test results indicating that the plaintiff might have been exaggerating his symptoms, although they felt that he also had a psychiatric disorder. (Tr. 226-8). Despite the fact that they found "marked" restrictions in several areas and a "seriously limited but not precluded" ability in many areas of functioning, the severe restrictions were seemingly inconsistent with a GAF of 55, which also indicates a "moderate" impairment. (Tr. 229-32). In view of the fact that they were one-time examiners, their opinion was not entitled to special weight, and as previously noted, the plaintiff has not made any argument regarding mental or intellectual functioning.

The decision will be affirmed.

This the 24th day of October, 2007.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13